IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
EASTERN DIVISION

**WILCHIE CLAY**
**ED RAYFIELD**                                                             **PLAINTIFFS**

**v.**                                                             **CASE NO. 1:11CV85-B-S**

**CLOYD GARTH**                                                            **DEFENDANT**

### MEMORANDUM OPINION

Presently before the court is Defendant's motion **[13]** to dismiss for failure to state a claim, or alternatively, for summary judgment. Upon due consideration of the parties' filings and supporting and opposing authority, the court is ready to rule.

Factual Background

Wilchie Clay, Ed Rayfield, and Cloyd Garth ran for the office of Alderman in Ward II of Aberdeen, Mississippi during the 2008 election. Clay and Garth, both black males, qualified for the run-off election. Rayfield, a white male, was eliminated in the first primary and supported Clay in the run-off.

The run-off election was held on April 22, 2008. Clay received 234 votes while Garth received 209. Of the absentee voters, 55 cast their ballots for Garth, and 29 for Clay, giving Garth the election by one vote.

The Municipal Democratic Executive Committee of Aberdeen, Mississippi discovered that three absentee voters also voted in person at the polls and that the absentee vote envelopes had been opened and placed with the other absentee ballots making it impossible to determine

which candidate benefitted from these "double votes." The committee's investigation revealed that Garth's supporters "influenced" these illegal absentee voters and awarded the election to Clay.[1] Garth initiated a formal election contest and Clay counter-appealed. The hearing tribunal found that in addition to the illegal absentee votes, two persons who did not live in Ward II were "influenced" by Garth and voted in Ward II. The tribunal determined that there was a sufficient number of illegal votes cast to change the true result of the election and ordered a new run-off, which Garth won.

Plaintiffs Clay and Rayfield initiated the current action alleging violations of § 2 of the Voting Rights Act, the Fourteenth Amendment, the Fifteenth Amendment, and 42 U.S.C. § 1981.

Defendant filed the instant motion to dismiss for failure to state a claim, or alternatively, for summary judgment.

Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) challenges the legal sufficiency of the complaint and raises an issue of law. When reviewing a motion to dismiss, the court "accepts all well pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Guidry v. American Pub. Life Ins. Co.*, 512 F.3d 117, 180 (5th Cir. 2007). "Factual allegations must be enough to raise a right to relief above the speculative level, on assumption that all allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007).

---

[1] *See* Opinion and Order of Election Tribunal, Exh. A to Defendant's Motion.

In ruling on a Rule 12(b)(6) motion to dismiss, the court generally may not look beyond the pleadings; however, matters of public record are exceptions. *Cinel v. Connick*, 15 F.3d 1338, 1341, 1343 n.6 (5th Cir. 1994).[2]

### A. Standing

Standing is a "threshold matter of jurisdiction," *Cole v. General Motors Corp.*, 484 F.3d 717, 721 (5th Cir. 2007), that may be raised by the court at any time. *Sommers Drug Stores Co. Emp. Profit Sharing Trust v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989). The court must inquire "whether the constitutional or statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief." *Warth v. Seldin*, 422 U.S. 490, 500 (1975) (footnote omitted).

The Voting Rights Act authorizes a private cause of action for individuals who are "aggrieved persons." 42 U.S.C. § 1973a. Thus, in addition to the minimum constitutional requirements, a person must be aggrieved by defendant's actions. *See Holt v. JTM Indus., Inc.*, 89 F.3d 1224, 1229-30 (5th Cir. 1996). If a plaintiff satisfies the constitutional requirements for a vote dilution claim under the Voting Rights Act, he also satisfies the constitutional standing requirement for a vote dilution claim under the Fourteenth and Fifteenth Amendments. *See Perry-Bey v. City of Norfolk, Va.*, 678 F.Supp.2d 348, 362 (E.D. Va. 2009) (citing *Parker v. Ohio*, 263 F.Supp.2d 1100, 1107 (S.D. Ohio 2003), *aff'd*, 540 U.S. 1013 (2003)).

---

[2] Defendant styled his filing as a motion to dismiss, or in the alternative, for summary judgment. A court must convert a motion to dismiss to a motion for summary judgment when documents are attached to the motions that are outside the pleading and not excluded by the court; however, the only exhibit attached to Defendant' motion is an opinion and order from the Monroe County Circuit Court, which is a document of public record. The court will therefore consider Defendant's motion as a motion to dismiss under Rule 12(b)(6). *See* Fed. R. Civ. P. 12(d).

Plaintiff Clay sued in his capacity as a candidate for public office and as a voter. Clay, as a black voter, is not a member of the voting group allegedly affected by Garth's actions and therefore does not have standing as an aggrieved voter.

Instead, Clay seeks a remedy based on the loss of the votes he claimed he would have received had the white vote not been diluted. *See Roberts v. Wamser*, 883 F.2d 617, 621 (8th Cir. 1989). "An unsuccessful candidate attempting to challenge election results does not have standing to sue under the Voting Rights Act. Standing under the Act is limited to 'aggrieved persons,' and that category is confined to persons whose voting rights have been denied or impaired." *Roberts*, 883 F.2d at 621, 624. Thus, Clay cannot assert claims under the Voting Rights Act, Fourteenth, or Fifteenth Amendments.

It further appears to the court that both Plaintiffs would lack standing to maintain an action for injunctive relief. To obtain an injunction, Plaintiffs must show that they have "sustained or [are] immediately in danger of sustaining some direct injury' as the result of the challenged official conduct and the injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *City of Los Angeles v. Lyons*, 461 U.S. 95, 101-102, (1983) (citations omitted). Plaintiffs' complaint states that "[w]ithout injunctive relief from this Court, it is likely that Defendant Garth will engage in the same type absentee voter scheme in future elections in which parties are likely to be candidates." Allegations of unspecified future elections where the parties are "likely to be candidates" does not give rise to a likelihood of irreparable injury. Plaintiffs have failed to allege any facts for which injunctive relief would be appropriate.

B.  Section 2 of the Voting Rights Act

Section 2(a) of the Voting Rights Act prohibits a state or political subdivision from imposing any practices or procedures that "result in the denial or abridgement of the right to vote of any citizen who is a member of a protected class of racial and language minorities." *Thornburg v. Gingles*, 478 U.S. 30, 42 (1986). Section 2(b) provides that a violation of subsection (a) occurs if the "'totality of the circumstances' reveal that 'the political processes leading to nomination or election . . . are not equally open to participation by members of a [protected class] . . . in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.'" *Id*. (quoting 42 U.S.C. § 1973(b)). "The statute covers episodic practices, as well as structural barriers, that result in discrimination in voting." *Welch v. McKenzie*, 765 F.2d 1311, 1315 (5th Cir. 1985).

"Section 2 only affords redress for voting practices 'imposed or applied by any State or political subdivision.'" *Id*. (quoting 42 U.S.C. § 1973). Plaintiffs allege that Garth, as the incumbent alderman of Ward II, acted under color of state law. Notably, the election officials who oversaw the election in which persons were allowed to "double vote" and absentee ballot envelopes were improperly opened are not defendants in this action. In *Welch*, the Fifth Circuit determined that one act pled by Plaintiffs might have constituted dilution of votes, but the fraudulent act was committed by the defendant candidate, who at the time was the incumbent supervisor, and his supporters; not by the county registrar or the Executive Committee. The Fifth Circuit agreed with the district court that "the election irregularities in this case were 'isolated and singular incidents' and that the registrar was not involved in any conspiracy."

*Id*. at 1316. Since the candidate was not an official actor, his "chicanery" was not a Voting Rights Act infringement. *Id*. Similarly, although Garth was a city official who directed a city worker to haul workers to the polls, these actions were not imposed by election officials of the city.

Even assuming Garth is a proper defendant under the Act, Plaintiffs' claim would still fail. The only facts pled by Plaintiffs to establish racial discrimination are (1) Garth referring to Clay as an "Uncle Tom" to black voters during the election campaign and (2) Garth directing election haulers to transport voters who were almost all black to the polls to illegally vote absentee.[3] There is no allegation of a discrimination effect or results other than the conclusory statement by Plaintiffs that the white vote was diluted. There is no mention that the number of minorities elected to city offices was less because of defendant's conduct. *See Gingles*, 478 U.S. at 44-45. Instead, Plaintiffs use the novel approach that the white voting group was unable to elect a black candidate.[4]

Garth's actions as pled do not give rise to the gross, spectacular racial discrimination contemplated by Congress in enacting the Voting Rights Act, but is more appropriately a garden variety election dispute that should be resolved in state court. *See Welch*, 765 F.2d at 1317.

Plaintiffs' complaint is unclear whether they even allege that Garth engaged in illegal voting practices during the second run-off ordered by the tribunal. It is possible that a remedy

---

[3] Plaintiffs also allege that Garth directed city employees to delay collection of electric bills of delinquent Ward II customers, resulting in the city providing free electricity to influence voters in Garth's favor. Plaintiffs do not allege that this practice was performed on the basis of race or that only black voters were targeted in this scheme.

[4] Plaintiffs further never specifically allege that the white population is in fact the minority voting group in Ward II of Aberdeen, Mississippi.

may have previously been obtained through a new election, albeit one that Clay lost. Regardless, Garth's campaign dirty tricks are not practices that are constitutionally cognizable.

Plaintiffs have plead insufficient facts to maintain a claim under section 2 of the Voting Rights Act, and further could not establish a claim as a matter of law against Defendant Garth. This claim is dismissed.

### C. Fifteenth Amendment

Plaintiffs further allege a violation of the Fifteenth Amendment, which provides that "[t]he right of citizens of the United States to vote shall not be denied or abridged by the United States, or by any State on account of race, color, or previous condition of servitude." U.S. Const. amend. XV. The Supreme Court has never held that vote dilution violates that Fifteenth Amendment. *See Voinovich v. Quilter*, 507 U.S. 146, 159 (1993).

Plaintiffs have not pled that they were unable to vote in the election or that their ability to access the polls was impeded in any way. Instead, Plaintiffs' complaint repeatedly states that Defendant Garth organized an illegal scheme whereby the white vote would be diluted and the black vote would be maximized.

Under current law, vote dilution does not give rise to a cause of action under the Fifteenth Amendment. *See Reno v. Bossier Parish*, 528 U.S. 320, 334 n. 3 (2000)*; Holder v. Hall*, 512 U.S. 874, 920 (1994) (Thomas, J. concurring in judgment); *Mobile v. Bolden*, 446 U.S. 55, 84 n. 3 (1980) (Stevens, J. concurring); *see also Tigrett v. Cooper*, No. 10-2724-STA-tmp, 2012 WL 691892, at *10 (W.D. Tenn. Mar. 2, 2012) (summarizing Supreme Court precedent). Accordingly, the court finds that Plaintiffs have failed to state claim for vote dilution under the Fifteenth Amendment.

D.   **Fourteenth Amendment**

Plaintiffs further assert that Garth's actions denied Plaintiffs equal protection of the laws by diluting the white vote. The Supreme Court has held that the right to vote is "a narrow substantive right conferred by the equal protection clause 'of a person to vote on an equal basis with other voters.'" *Gamza v. Aguiree*, 619 F.2d 449, 453 (5th Cir 1980) (quoting *City of Mobile v. Bolden*, 446 U.S. 55 (1980)). The Fifth Circuit in *Gamza* stated the following:

> We must therefore recognize a distinction between state laws and patterns of state action that systematically deny equality in voting, and episodic events that, despite non-discriminatory laws, may result in the dilution of an individual's vote. Unlike systematically discriminatory laws, isolated events that adversely affect individuals are not presumed to be a violation of the equal protection clause.

*Id*.

As discussed *supra*, Garth's actions as pled do not give rise to a constitutional deprivation, but are rather a lesser legal wrong. *See id*. Plaintiffs' claim under the Fourteenth Amendment will therefore be dismissed.

E.   **42 U.S.C. § 1981**

Plaintiffs' complaint simply states that Defendant Garth's actions violate the 42 U.S.C. § 1981 right of all persons to contract free of race discrimination. The court finds no authority to support a freedom to contract claim in the context of vote dilution. Even if such an action could be maintained, Garth's acts as pled are not constitutionally cognizable. Plaintiffs' claim under § 1981 will be dismissed.

<u>Conclusion</u>

Plaintiffs have presented no claims that are viable as a matter of law and have failed to plead sufficient facts in which to raise their alleged claims. For these reasons, Defendant's motion to dismiss is hereby granted. Because the court grants dismissal on these grounds, Defendant's remaining arguments will not be discussed.

**ORDERED AND ADJUDGED**, this the 27th day of September, 2012.

/s/ Neal B. Biggers
**NEAL B. BIGGERS**
**UNITED STATES DISTRICT JUDGE**